# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

| | |
|---|---|
| **QUINTON DONEL POOLE** | **CIVIL ACTION NO. 3:16-CV-1029** |
| **VS.** | **SECTION P** |
| | **JUDGE ELIZABETH E. FOOTE** |
| **LINCOLN PARISH DETENTION CENTER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Pro se plaintiff Quinton Donel Poole, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on July 11, 2016. Plaintiff is a pre-trial detainee, incarcerated at the Lincoln Parish Detention Center (LPDC), Ruston, Louisiana. He complains he was not given his medication for a nine (9) day period after being transferred from another facility. This matter was referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

### *Statement of the Case*

On May 31, 2016, plaintiff was transferred to LPDC from Bossier Parish Medium Facility. [Rec. Doc. 4, p. 3] At the time of his transfer, he was taking four (4) different medications-

Clonidine[1] 2mg, Amlodipine[2], HCTZ[3] for high blood pressure and Buspirone[4] 10mg for anxiety/depression.  Id.  On June 3, 2016, he was informed by Deputy Karnes, who was issuing medication for Nurse Vickie Reeveas, that his medication was not on the cart and that he should write to Nurse Reeveas regarding the situation.  Id.  For the next nine (9) days, plaintiff spoke to numerous prison employees about his medication and was told by each to continue to write to Nurse Reeveas.  He asserts that despite submitting grievances and medication requests through the prison's Kiosk system, and via handwritten ARPs, he never received a response.

Plaintiff alleges that due to the missed medication, he suffered from headaches and fever until June 14, 2016, when his medication was dispensed.

### Law and Analysis

---

[1] Clonidine tablets are used alone or in combination with other medications to treat high blood pressure. Clonidine treats high blood pressure by decreasing your heart rate and relaxing the blood vessels so that blood can flow more easily through the body.See Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs and Supplements, http://www.nlm .nih.gov/medlineplus/druginformation.html

[2] Amlodipine is used alone or in combination with other medications to treat high blood pressure and chest pain (angina). Amlodipine is in a class of medications called calcium channel blockers. It lowers blood pressure by relaxing the blood vessels so the heart does not have to pump as hard. It controls chest pain by increasing the supply of blood to the heart. If taken regularly, amlodipine controls chest pain, but it does not stop chest pain once it starts. Your doctor may prescribe a different medication to take when you have chest pain. See Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs and Supplements, http://www.nlm .nih.gov/medlineplus/druginformation.html

[3] While plaintiff's complaint states that he was taking "HTZ" to treat the fluid around his heart, the Court presumes he means "HCTZ" or Hydrochlorothiazide, which is a medication is used alone or in combination with other medications to treat high blood pressure. Hydrochlorothiazide is used to treat edema (fluid retention; excess fluid held in body tissues) caused by various medical problems, including heart, kidney, and liver disease and to treat edema caused by using certain medications including estrogen and corticosteroids. Hydrochlorothiazide is in a class of medications called diuretics ('water pills'). It works by causing the kidneys to get rid of unneeded water and salt from the body into the urine.  See Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs and Supplements, http://www.nlm .nih.gov/medlineplus/druginformation.html

[4] Buspirone is used to treat anxiety disorders or in the short-term treatment of symptoms of anxiety.  See Medline Plus, A Service of the U.S. National Library of Medicine and the National Institutes of Health, Drugs and Supplements, http://www.nlm .nih.gov/medlineplus/druginformation.html

*1. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (per curiam). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

*2. Medical Care*

Plaintiff does not claim that he was denied appropriate medical treatment; rather, only that he experienced delays in obtaining his medicine. The standard to apply in analyzing a denial/delay of medical care claim asserted by a pretrial detainee depends upon whether the claim is directed to a "condition of confinement" or to an "episodic act or omission." *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997), quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir. 1996). Under the "episodic act" standard, "a state official's episodic act or omission violates a pretrial detainee's due

3

process right to medical care if the official acts with subjective deliberate indifference to the detainee's rights." Thus, the plaintiff must show that he suffered a sufficiently serious deprivation and deliberate indifference by prison officials. *Hare*, 74 F.3d at 643 and 650. This is the same standard applicable to convicted prisoners whose claims are analyzed under the Eighth Amendment.

Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Furthermore, as previously noted, deliberate indifference is not the equivalent of negligence; deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then

4

disregarded an <u>excessive risk</u> of injury to him, and,  that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed</u>, <u>and that they drew that</u> inference. *Id.* at 837.

In *Black v. Washington*, 09-1966, 2010 WL 793448 (W.D. La. March 2, 2010), a prisoner brought suit against prison officials complaining of delays in providing prescription medication. According to his complaint, despite being prescribed prescription medication to treat his glaucoma, subsequently submitting five (5) inmate request forms and making numerous trips to the infirmary, he experienced an 18 day delay in receiving one medication and a one week delay in receiving the other. *Id.* At *3.  The Court found that the plaintiff did not allege that these "moderate delays" were either purposeful or that they resulted in substantial harm, and, accordingly, dismissed plaintiff's claims. *Id.*

In *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir.1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability.  The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti*, 958 F.2d 91 (5th Cir.1992); *Woodall, supra*.

Here, there is no reason to believe that the defendants purposefully delayed providing the prescribed medications. While plaintiff alleges that he suffered from headaches and high pressure, this does not rise to the level of substantial harm.  He has made no claim of any lasting complications resulting from the delay in receiving his medication. *See Easter v. Powell,* 467 F.3d 459 (5th Cir. 2006).  In any event, plaintiff has not alleged that these moderate delays were either

purposeful or that they resulted in substantial harm.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).

In Chambers, Monroe, Louisiana, October 7,  2016.

**KAREN L. HAYES**
**UNITED STATES MAGISTRATE JUDGE**